McBRIDE, Judge.
Plaintiff, who was riding a bicycle, was struck by an automobile, on July 24, 1949, at about 5:30 o’clock, p. m., at the intersection formed by the inbound traffic roadway of St. Claude Avenue and Angela Street, in the Parish of St. Bernard, and by this suit seeks to recover, for his personal injuries and for the damages inflicted upon hi's bicycle, from defendants, Robert J. Cambre, owner and driver of the automobile, and his insurance carrier, The Travelers Insurance Company. Plaintiff has taken this appeal from the judgment of the lower court which dismissed his suit after a trial on the merits.
Cambre is charged with driving his auto- . mobile on the extreme right-hand side of the inbound traffic lane of St. Qaude Avenue at thirty-five miles an hour. He is further charged with failing to sound his horn, to apply his brakes, or to take the necessary precautions to avoid striking plaintiff, who, the petition alleges, was practically across the roadway.
The answer denies Cambre was negligent, and avers that as soon as the bicycle of plaintiff came into the roadway he did everything possible to avert an accident; in the alternative, plaintiff is charged with contributory negligence in several specified respects.
The locus of the accident is in St. Bernard Parish just beyond the limits of the Parish of Orleans. St. Qaude Avenue is an .extremely wide thoroughfare having two lanes for vehicular traffic, the outbound roadway being on the river side of the street, and the inbound roadway, that is to say, for traffic traveling towards New Orleans, is on the lake side. The traffic lanes are separated by a wide neutral ground having a railroad track in the center, practically even with the surface of the neutral ground, and the neutral ground is elevated approximately eighteen inches above the inbound traffic roadway. At *726 Angela Street, which intersects St. Claude at a right angle, from the lake side rail of the track to the edge of the inbound traffic lane is a space of about seventeen feet. The first twenty-one inches of this space is the same height as the rails, .'but from then on there is a declivity to the beginning of the inbound roadway.
On the Sunday afternoon of the accident, Hurst had propelled his bicycle down St. Claude Avenue, and upon reaching Angela Street made a left turn, with the intention of going out Angela Street to his home which is located a few blocks from the scene of the accident. Hurst and several of his witnesses testified that when he reached the lake side rail on the neutral ground he stopped, took his right foot off the pedal, looked to his right or in the downtown direction from which Cambre’s automobile approached, and then started down the slope to the traffic roadway. It was testified that he also looked for approaching vehicles immediately before entering the roadway.
The evidence preponderates to the effect that Cambre’s automobile struck Hur§t just as the bicycle reached about the center of the intersection formed by Angela Street, which is twenty-three feet seven inches wide, and the roadway. The speed of the bicycle, according to the plaintiff’s witnesses, was from three to four miles an hour..
A motion picture theater is located on the downtown-lake corner of the intersection, and at the time of the accident there were a number of automobiles parked along the sidewalk curb, and automobiles were also parked in a double line on the opposite side of the roadway, some entirely on the neutral ground and others half on the neutral ground and half in the roadway, which condition narrowed the traffic lane for vehicles going in the direction of New Orleans, the normal width of which lane is thirty-six feet. The fact is disputed as to how many automobiles were thus parked on the neutral ground.- The defense witnesses stated that the line of parked cars extended right up to the intersection of Angela Street, but according to the plaintiff there were but a few parked cars, none of which were nearer than thirty feet to Angela Street. Nuccio, one of plaintiff’s witnesses, under cross-examination, stated that there may have been -one automobile parked in front of the theater, but no cars were parked along the neutral ground.
Hurst stated that when he stopped on the neutral ground one car passed, and he could see that for about half a block down St. Claude Avenue no other traffic was approaching, and he then started to roll down the slope, looking again just before reaching the roadway. He had no-knowledge of the presence of the Cambre. automobile until he was hit.
Cambre, with two guest passengers, was-returning to New Orleans from Delacroix; Island, and attached to his automobile was-an empty utility trailer. One of the passengers, who was Cambre’s brother-in-law, was seated on the front seat alongside the driver, and the other passenger,. Cambre’s brother, was occupying the rear-seat. There is no material variance ⅛ their testimony; they related that Cambre had been driving between twenty-five and', thirty miles an hour, but before reaching; the parked automobiles he slackened his-speed to twenty miles an hour, because of the congested condition in front of the-movie theater. The automobile was traveling a little to the left of the center of the roadway, or in other words nearer the neutral ground. The three were unanimous in the declaration that Hurst suddenly emerged into the path of their automobile from behind the parked cars on. the neutral ground, and that when the-emergency was thus presented, Cambre-immediately applied his brakes, but to no-av-ail. After Hurst was struck, the automobile traveled not more than ten feet.. Cambre did not attempt to estimate the-distance between his automobile and Hurst as.the latter came into the roadway. The brother stated that the automobile was. then five feet before reaching the intersection, while the brother-in-law’s estimate-was that the automobile was just about, at the intersection.
The witnesses disagreed as to exactly-what part of the automobile struck the- *727 bicycle. Some say that there was a dent in the front of the hood a little ■ toward the right, while others stated that the dent was toward the left. Cambre, when tes- • tifying, stated that he had not had the dent removed from the hood, and that he was willing to exhibit the automobile to the court for examination. The position of plaintiff after being struck is also a controverted question. Defendants’ witnesses say that he was lying in the St. Claude Avenue roadway about eight to ten feet from the point of impact, while the plaintiff’s witnesses estimated his position as being up to twenty-five feet away. The pro and con of these details is something we need not delve into.
Two of plaintiff’s witnesses testified that immediately after the accident Cambre made the statement that the weight of the trailer prevented a timely stop of the automobile. Cambre vehemently denied that he had made such a statement.
Although there are no written reasons for judgment in the record, our brother below, who saw and heard the witnesses and was in a position to assess their veracity, undoubtedly was of the opinion that the accident happened in the manner described by the defense witnesses, and our careful study and analysis of the record convinces us that this finding is the correct one.
Plaintiff’s counsel candidly admitted in argument that plaintiff’s success in this cause depends upon the application of the doctrine of the last clear chance. Counsel relied upon a mathematical formula to show that Cambre had ample time, space, and opportunity in which to either brake his automobile to a stop, of to take other appropriate measures to avoid striking Hurst. Pie points to the testimony of Cambre’s brother:
“Q. From the time you first saw him until the time the accident ensued, how much time had elapsed? A. Seconds.
“Q. A matter of seconds? A. Yes, sir.
“Q. Approximately how many seconds? Two, three, four or five? A. Not more than three.”
• Counsel reasons that whereas the speed of the bicycle was from three to four miles an hour, as testified to by the plaintiff’s witnesses, it was moving at the rate of approximately five feet per second, while the automobile, if it was being driven at twenty miles an hour, was traveling at thirty feet per second, and that if the bicycle entered the intersection three seconds before the automobile reached the point of impact, Cambre had ninety feet within which to bring his automobile to a stop.
The above analysis and argument is predicated on the quoted portion of the testimony of Cambre’s brother. It will be noted that the witness did not make the statement that three seconds elapsed between the entry of Hurst into the street and the impact of the automobile. All that the witness said was that not more than three seconds elapsed, and a strained construction would have to be placed on the testimony if it is to be accorded the import sought to be attributed to it by counsel. Hurst’s ineptitude created a sudden emergency, and we doubt that any person of normal understanding, under the circumstances, could have accurately measured the time in seconds or split seconds.
The technical views expressed by an expert witness, to the effect that Cambre’s automobile could have been brought to a stop within a distance of forty-four feet from the time he observed Hurst, need no comment.
Under the facts of the case as we find them, we do not believe that the doctrine of the last clear chance, nor its offshoots, the doctrines of apparent peril and discovered peril, have applicability here. We are convinced that Hurst suddenly and without warning coasted his bicycle down the slope and entered into the St. Claude Avenue roadway directly in the path of the Cambre automobile, making the accident inevitable.
Because of our holding in the case, the intervention of the Board of Administrators of Charity Hospital of Louisiana, seeking to recover the cost of hospitalization, med *728 icines, X-rays, etc., supplied to Hurst, passes out of the case.
For the reasons assigned, the judgment appealed from be -and it is hereby affirmed.
Affirmed.